OLIVER FROST *versus* JOHN GODDARD *& al.*

When a seller has set apart property for a purchaser by the survey or assort-
    ment of a person other than the one agreed upon, and such property has
    been received by the purchaser, or by any one to whom his right to it has
    been transferred, the seller cannot, by denying the validity of his own acts,
    reclaim the property, on the ground, that there is no proof, that the pur-
    chaser consented to such a survey or assortment.

Where there has been a sale of property for the purpose of defrauding cred-
    itors, a creditor must take measures to avail himself of his rights, if he
    would defeat the title thus acquired.   He is not, however, restricted to the
    single mode of proceeding on legal process, but may obtain a satisfaction of
    his debt by a subsequent purchase of the debtor in good faith and for a
    valuable consideration.

When counsel have presented a question testing the admissibility of a par-
    ticular description of testimony, and have obtained a decision of the Court
    that it is not admissible, if some portion of the same description of tes-
    timony should afterwards be introduced, the objecting party would not be
    entitled to file exceptions, unless he had called the attention of the Court
    to it at the time when it was introduced.   It is too late to make the objec-
    tion when the cause has been argued by counsel and committed to the jury
    by a charge from the Court.

TENNEY J. presiding at the trial, among other instructions to
the jury, gave the following : —

If on the 27th or 28th of July, 1842, Bragg consented to
deliver the property to Goddard, and Bragg agreed, that Couil-
lard should sort the shingles, and he did sort them, and they
were afterwards delivered to Goddard before the delivery by
Bragg to Frost, or the taking possession by Walker, Goddard
had a right to the same, and there was no trespass.

If, at the same time, Bragg consented that Goddard should
have the property, and Bragg said he would deliver it, and he
also agreed, that Couillard should sort the shingles, and they
were sorted by Couillard, and delivered to Goddard after the
sale and delivery to Frost, or the possession taken by Walker,

and the jury should also find that the sale to Frost was only to save the property from being taken on Bragg and St. Clair's debts, and was not intended by Bragg and St. Clair as a real sale, and Frost knew their intention, and was willing to aid them to carry it out, Goddard had a right to take the property, and there was no trespass.

The evidence is given in the exceptions. The facts may be found in the opinion of the Court. The verdict was for the defendants, and the plaintiff filed exceptions to the ruling of the presiding Judge.

*Rowe* and *E. G. Rawson* argued for the plaintiff, contending : —

1. The part of the affidavit of Goddard, stating his own knowledge of the facts, which he said the witness would testify to, ought not to have been permitted to go to the jury. The facts were material, and could not be proved by the oath of the party. 5 Mass. R. 405 ; 5 Pick. 296 ; Co. Lit. 227 (c) ; 3 Johns. R. 252 ; 6 Greenl. 141.

2. The instruction was erroneous wherein it was said, that the consent of Bragg alone was sufficient to authorize the alteration of the contract, and to substitute Couillard instead of Dutton to sort the shingles.

3. The admission of testimony to show that the sale from Bragg and St. Clair to the plaintiff was made to defeat or delay creditors, and the instruction to the jury, that if they found that the sale was so made, Goddard would have a right to take the shingles according to Couillard's survey, notwithstanding such sale, were erroneous. Such sales are void only against such creditors as are hindered or delayed by them. 15 Petersd. Ab. 344 ; 2 Hov. on Fr. 75 ; 1 Ves. Jr. 161 ; 2 Pick. 411 ; 15 Johns. R. 588 ; 1 Story's Eq. § 366, 367, 371.

*McCrillis* and *Washburn* argued for the defendants, citing 1 Pick. 476 ; 13 Pick. 175 ; 15 Mass. R. 216 ; 3 Fairf. 515.

The opinion of the Court was drawn up by

SHEPLEY J. — This is an action of trespass brought to recover the value of certain shingles taken by the defendants

from a wharf in Bangor.   Both parties claim them by conveyances from Bragg and St. Clair, who appear to have been in possession of the wharf, on which they had been piled.

In the month of February, 1842, Paulk and Dutton purchased all their cedar shingles of the two best qualities, then mixed with others of an inferior quality, to be sorted and selected by Dutton; and on July 2, 1842, conveyed by a bill of sale, their shingles on that wharf, with others, to Goddard and Jenkins, by whose order they were carried away by the defendants. At the time of this sale Paulk stated to Goddard, that he delivered to him all the shingles due to them by their contract made with Bragg and St. Clair.   There was testimony tending to prove, that Bragg consented, that Goddard and Jenkins might take the shingles remaining to be delivered under that contract, by the selection and assortment of one Couillard instead of Dutton; and that they were accordingly selected and assorted by him.   On July 28, 1842, Bragg and St. Clair, by bill of sale conveyed their shingles on that wharf with other lumber to the plaintiff, and one Walker took possession of the property for him.   In relation to this branch of the case, the jury were in substance instructed, if they should find, that Bragg consented to deliver the shingles to Goddard, and that Couillard should sort them, and that they were delivered to Goddard, before they were delivered to the plaintiff or his agent, the plaintiff would not be entitled to recover.

Paulk and Dutton were to pay a higher price, than they were to receive for the shingles.   And it is insisted, that these instructions were erroneous, because they did not require the consent of Paulk and Dutton, that Couillard instead of Dutton should select and sort them.   When a seller has set apart property for a purchaser by the survey or assortment of a person other than the one agreed upon, and such property has been received by the purchaser or by any one, to whom his right to it has been transferred, the seller cannot by denying the validity of his own acts reclaim the property, on the ground, that there is no proof, that the purchaser consented to such a survey or assortment.   Paulk and Dutton, by conveying their right

to receive shingles mixed with others, must be considered as thereby authorizing the purchasers to use the means necessary to obtain them.

The jury were further instructed, if they should find, that the shingles were so assorted and delivered to Goddard after the sale and delivery to the plaintiff, and " that the sale to Frost was only to save the property from being taken on Bragg and St. Clair's debts, and was not intended by Bragg and St. Clair as a real sale, and that Frost knew their intention and was willing to aid them to carry it out, Goddard had a right to take the property." The objections to these instructions are, that Goddard and Jenkins do not appear as creditors injured or delayed, or as having commenced any suit to attach or seize the property. According to the finding of the jury the plaintiff may be considered as the purchaser of the property, before the legal title had passed from Bragg and St. Clair, with an intention to aid them to defraud their creditors. In such case a creditor must take measures to avail himself of his rights, if he would defeat the title of the plaintiff. But he would not be restricted to the single mode of proceeding on legal process by attachment on a writ or seizure on an execution. The sale, as it respects a creditor, being void, he may entirely disregard it, and obtain a satisfaction of his debt by a subsequent purchase of the debtor in good faith and for a valuable consideration. In this case Paulk and Dutton, on the facts supposed by the instructions, would be creditors of Bragg and St. Clair; and their right to be paid by receiving the shingles, had been transferred to Goddard and Jenkins, who might, after a fraudulent sale to the plaintiff, proceed and obtain a title to the property to satisfy their claim in the same manner, as they would have done, if no such sale had been made.

Another cause of complaint is, that Goddard made an affidavit stating, what he expected to prove by an absent witness; that the plaintiff consented to admit, that the witness would so testify; that objection was made to the reading of any other portion of the affidavit; and that the objection was sustained;

and yet that another portion of the affidavit containing a declaration, that Goddard knew the same facts, was read and received by the jury as a part of the testimony. There can be no doubt, that such portion of the affidavit, as the Court had in effect decided to be inadmissible, was improperly read to the jury, although no particular objection was made to it at the moment. Before the papers in the cause were committed to the jury, the attention of the Court was called to that part of the affidavit, but no further order was taken respecting it. When counsel have presented a question testing the admissibility of a particular description of testimony and have obtained a decision of the Court, that it is not admissible, if some portion of that description of testimony should afterward be introduced, the opposing party would not be entitled to file exceptions, unless he had called the attention of the Court to it at the time, when it was introduced. If the testimony were contained in a deposition or other written document, and a principle of admission or exclusion had before been settled, which could be easily comprehended and applied, a party, who violated it by reading parts thereby excluded, could not be entitled to any protection or favor, if the opposing counsel did not at the moment notice it. And if such a course of proceeding were brought to the notice of the Court before such testimony had been used, without objection, as evidence in the cause, the Court should prevent the party, who had thus introduced it, from obtaining any advantage by it. If opposing counsel should omit to call the attention of the Court to it, until the cause had been argued by counsel, and committed to the jury by a charge from the Court, it would be difficult for the Court to determine whether such delay had been occasioned by inadvertence or by the expectation, that it might not be injurious to his client to permit it to be introduced. If he should therefore wait till the moment, when the papers were about to be committed to the jury, and then, after he had permitted it to be regarded as a part of the testimony, during the argument and charge make his election, and call upon the Court to exclude it, the Court might well regard it as

too late to raise a question respecting the admissibility of testimony. It is not supposed, that the counsel in this case delayed to make the motion for its exclusion with the design to have the advantage of it, if it might be found to aid him, and to have it excluded, if it proved to be injurious, but when a court of justice is called upon to establish or act upon some rule of evidence or practice, it must guard against all opportunities for wresting and applying it so, as to make it operate injuriously.

*Exceptions overruled.*